IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DINARA A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV196 |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Dinara A. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on December 7, 2021, alleging a disability onset date of August 12, 2021 in both applications. (Tr. at 21, 205-09.)[2] Her applications were denied initially (Tr. at 81-94, 111-20) and upon reconsideration (Tr. at 95-110, 123-30). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 131-32.) On January 10, 2024, Plaintiff attended the subsequent telephone hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 21, 43-80.) Although informed of her right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. (Tr. at 21, 45-46.) Plaintiff also chose to amend her alleged onset date to January 25, 2023 at that time. (Tr. at 46-47.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 37), and on January 23, 2025, the Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

        In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of January 25, 2023. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr.

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

at 23.)  At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Obesity; left DeQuervain's tenosynovitis; chondromalacia of the left knee; cervical myofascial pain syndrome; left carpal tunnel syndrome release; headaches; post-traumatic stress disorder (PTSD); and depression[.]

(Tr. at 24.)  The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing.  (Tr. at 24-25.)  The ALJ therefore assessed Plaintiff's RFC and determined that she could perform light work with the following, additional limitations:

> [Plaintiff] can occasionally reach overhead, frequently handle and finger, frequently stoop, kneel, and crouch.  [She] cannot drive an automobile for completion of job tasks.  [Plaintiff] can have exposure to moderate noise levels.  [She] can understand, remember, and carry out simple instructions that can be detailed, but not complex.  The tasks should be simple, routine, and repetitive in nature.  [Plaintiff] can focus on tasks for two hours and a time, learned by demonstration of 30 days or less with routine changes in the work environment.  [She] can perform occasional keyboarding.

(Tr. at 25-26.)  Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff was unable to perform any of her past relevant work.  (Tr. at 34-35.)  However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy.  (Tr. at 36.)  Therefore, the ALJ concluded that Plaintiff was not disabled under the Act.  (Tr. at 37.)

Plaintiff now raises two related challenges to the ALJ's mental RFC assessment.  First, she contends that the ALJ "did not account for [Plaintiff's] moderate limitations with concentration, persistence, or pace, or explain why such limitations were unnecessary."  (Pl.'s

6

Br. [Doc. #7] at 1.) Second, Plaintiff argues that the ALJ also failed to "fully account for [Plaintiff's] difficulties in concentrating," particularly with regard to her pain, when assessing her RFC. (Pl.'s Br. at 1-2.) After a thorough review of the record, the Court finds that neither contention requires remand.

A. Concentration, persistence, and pace

Plaintiff first argues that the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC assessment in accordance with <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015). At step three of the sequential analysis, the ALJ in the present case determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In <u>Mascio</u>, the Fourth Circuit explained that, where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." <u>Mascio</u>, 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." <u>Id.</u> The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).  However, as previously noted in other cases in this District,

the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC.  Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, No. 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016)

(finding that RFC limitations to "simple, routine, repetitive tasks with simple, short

instructions, in a job that required making only simple, work-related decisions, involved few

workplace changes, and required only frequent contact with supervisors, co-workers, or the

public" sufficiently accounted for a Plaintiff s moderate limitations in concentration,

persistence, or pace in light of the ALJ's explanation throughout the administrative decision)

(quoting Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20,

2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the

plaintiff's argument under Mascio where the ALJ found that, notwithstanding moderate

limitations in concentration, persistence, and pace, the plaintiff could sustain attention

sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry

v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a

categorical rule that requires an ALJ to always include moderate limitations in concentration,

persistence, or pace as a specific limitation in the RFC"); Jones v. Saul, No. CV 8:18-2586-

BHH, 2020 WL 1316532, at *5 (D.S.C. Mar. 20, 2020) ("[T]he ALJ adequately accounted for

8

Plaintiff's moderate limitations in concentration, persistence, and pace by explaining how long and under what conditions Plaintiff could focus and maintain simple tasks, and by including restrictions related to Plaintiff's ability to change activities or work settings and work in proximity to others without distraction.").

Here, as in <u>Mascio</u>, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 25.)  Plaintiff now argues that, in making the RFC findings, the ALJ did not fully account for Plaintiff's ability to stay on task and maintain focus, given the finding of moderate difficulties with concentration, persistence, or pace.  However, in this case, the ALJ's RFC finding adequately accounted for Plaintiff's moderate limitations concentration, persistence, and pace, and included sufficient additional context to explain the ALJ's reasoning.

In reaching this conclusion, the Court notes first that unlike <u>Mascio</u>, the RFC in this case does not involve a limitation only to unskilled work, and instead includes seven separate limitations directed to Plaintiff's moderate limitations in concentration, persistence and pace, with a mental RFC specifying that Plaintiff (1) can understand, remember, and carry out simple instructions that can be detailed, but not complex, (2) that tasks should be simple, routine, and repetitive in nature, (3) that she can focus on tasks for two hours at a time, (4) that the tasks must be able to be learned by demonstration of 30 days or less, (5) with only routine changes in the work environment, (6) with no driving, and (7) with only moderate noise levels.  (Tr. at 25-26.)

The ALJ's discussion further explains these restrictions and how they address Plaintiff's limitations.  Notably, when categorizing Plaintiff's problems with concentration, persistence,

and pace as "moderate" at step three of the sequential analysis, the ALJ specifically found that Plaintiff "primarily reported difficulty" in this area "due to PTSD symptoms occurring after a motor vehicle accident" in June 2022 and that she "demonstrated some worried thought content and anxious or depressed mood on some mental status examinations, although with otherwise unremarkable function, . . . as discussed in more detail in Finding 5," i.e., the RFC discussion. (Tr. at 25.) As recounted in the ALJ's decision,

> toward the end of 2023, records contain some mental health treatment notes reflecting [Plaintiff's] complaints of difficulty sleeping due in part to recurrent nightmares about the motor vehicle accident, which returned after she started to drive again, fear and avoidance of driving, difficulty concentrating, and anxiety in loud places. Objectively, she demonstrated some modest abnormalities on mental status examinations, like anxious or depressed mood, restricted affect, and worried thought content, but had unremarkable appearance, alertness, orientation, speech, perception, insight, and judgment without homicidal or suicidal ideation. She was assessed with PTSD and other depressive disorder and recommended continued treatment with therapy. She also began medication management with a new primary care provider, even though she demonstrated intact alertness and orientation and normal mood, affect, behavior, thought content, and judgment on primary care examination.

(Tr. at 30) (citing Tr. at 654-55, 797-98, 808-11, 832-36). The ALJ further explained that, "[t]o account for [Plaintiff's] psychological symptoms and impairments, as well as the mental functioning limitations and any effects from pain," she found that Plaintiff "can only understand, remember, and carry out simple instructions that can be detailed, but not complex, with tasks that are simple, routine, and repetitive in nature." (Tr. at 32.) The ALJ also determined that Plaintiff "can focus on tasks for two hours at a time and perform jobs learned by demonstration of 30 days or less with routine changes." (Tr. at 32.) Finally, the ALJ found that Plaintiff "cannot drive an automobile for completion of job task[s] and can only have exposure to moderate noise levels." (Tr. at 32.)

Plaintiff contends that the RFC restriction to simple instructions and simple, routine, repetitive tasks presents issues similar to those in <u>Mascio</u>. However, as noted above, the RFC finding in this case is much more detailed than that in <u>Mascio</u> and includes various additional restrictions. For example, the RFC provides for no driving and no more than moderate noise levels, and these restrictions directly address Plaintiff's reported anxiety triggers. (Tr. at 31, 32, 51-52, 68, 69.) As noted above, the findings at step three regarding moderate limitations in concentration, persistence, and pace were specifically based on Plaintiff's reported difficulty "due to PTSD symptoms occurring after a motor vehicle accident," and the therapy notes link Plaintiff's anxiety directly to driving and loud noises. (Tr. at 25, 31.) The RFC therefore includes no driving and no more than moderate noise levels. These limitations are specifically addressed to Plaintiff's reported difficulties, and are clearly designed to reduce any triggers that could impact her concentration, persistence, and pace.

Moreover, with respect to the limitation to simple instructions and simple, routine, repetitive tasks, Plaintiff described her concentration difficulties as (1) a reduced ability to focus on her college lectures and assignments and (2) a reduced ability to follow instructions. (<u>See</u> Tr. at 32, 52, 70, 300.) Therefore, the RFC restrictions limiting Plaintiff to less complex tasks and simple, non-complex instructions reasonably addresses the precise mental limitations presented by Plaintiff.

Plaintiff also asserts that "a restriction to two-hour work intervals does not meaningfully address a moderate limitation in staying on task without further explanation." (Pl.'s Br. at 9) (citing <u>Ludlow v. Comm'r of Soc. Sec. Admin.</u>, No. SAG-15-2044, 2016 WL 4466790, at *8 (D. Md. Aug. 23, 2016); <u>Tucker v. Saul</u>, No. 1:18CV481, 2019 WL 3581795, at

*5-6 (M.D.N.C. Aug. 6, 2019) (internal citations omitted). Here, however, the ALJ explicitly found that Plaintiff "can focus on tasks for two hours at a time" (Tr. at 32 (emphasis added)), indicating that, despite her difficulties with concentration, persistence, and pace, Plaintiff did not require breaks beyond those included in a typical workday, and that she was able to focus on tasks for two hours at a time.

Finally, the ALJ explained that more extensive mental limitations were not warranted in light of Plaintiff's limited treatment, which consisted of therapy and medication management beginning the month before her disability hearing. Specifically, the ALJ found that

> the medical evidence shows some more recent treatment for mood symptoms and PTSD stemming from the motor vehicle accident with some symptoms like anxiety around loud noises, depression, fear of cars and driving, and difficulty concentrating, as reflected on examinations, but with limited treatment with therapy and medications and insufficient [evidence] to support [Plaintiff's] allegations of disabling psychological symptoms and limitations.

(Tr. at 31.) Thus, the ALJ specifically addressed Plaintiff's mental impairments, including her difficulty concentrating, but concluded that Plaintiff's psychological symptoms and limitations were not as disabling as alleged.

Overall, the ALJ provided sufficient explanation for the RFC limitations, which were detailed and extensive and directly tailored to the concerns and triggers raised by Plaintiff, and included sufficient explanation regarding the analysis of Plaintiff's mental impairments. In the circumstances, remand is not required under Mascio.

B. Pain limitations

In a related argument, Plaintiff contends that the ALJ failed to address her difficulty concentrating due to her pain, and specifically that the ALJ failed to appropriately evaluate her

12

pain and how it affected her ability to work.   With respect to the ALJ's evaluation of Plaintiff's symptoms, under the applicable regulations the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." <u>Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); <u>see also</u> 20 C.F.R. § 404.1529.   In <u>Arakas v. Comm'r of Soc. Sec.</u>, 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms.   20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. <u>See</u> 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4.   At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5.   SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." <u>Id.</u> at *4.   Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. <u>Id.</u> at *5.

<u>Arakas</u>, 983 F.3d at 95.   Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about her symptoms, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." <u>Craig</u>, 76 F.3d at 595.   This approach facilitates the ALJ's ultimate goal, which

is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i)     [Plaintiff's] daily activities;
(ii)    The location, duration, frequency, and intensity of [plaintiff's] pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
(v)     Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
(vi)    Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and concluded that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because the record as whole does not support [Plaintiff's] allegations to the extent that she suggests that she is totally disabled and unable to work." (Tr. at 27, 30.)  In making this finding, the ALJ acknowledged that Plaintiff experienced pain during the alleged disability period as a result of her physical impairments, which included DeQuervain's tenosynovitis, chondromalacia of the left knee, cervical myofascial pain syndrome, and left carpal tunnel syndrome.  (Tr. at 24, 29-34.)  However, the ALJ ultimately determined that Plaintiff's allegations regarding her level

14

of impairment due to pain were not consistent with her improved condition with treatment, the conservative nature of her treatment, or her activities of daily living. (Tr. at 31-32.)

Specifically, the ALJ explained that in 2023, Plaintiff underwent knee surgery with respect to her chondromalacia of the left knee and left wrist surgery due to DeQuervain's tenosynovitis and carpal tunnel syndrome. (Tr. at 29.) Following these procedures, Plaintiff reported significant improvement in symptoms. (Tr. at 29.) Her post-surgical knee care consisted of physical therapy and aspirin, while her wrist care consisted of NSAIDs, ice, and bracing as needed. (Tr. at 29.) Although Plaintiff continued to report "some persistent wrist pain and numbness," her provider noted that she was expected to have full symptom improvement in 18 months or less. (Tr. at 29.)

Plaintiff also complained of pain in her neck and upper extremities during 2023, but a battery of testing produced largely normal results, and she was ultimately assessed with cervical myofascial syndrome. (Tr. at 29.) The ALJ noted that Plaintiff "reported improvement with heat, physical therapy, massage, and ibubrofen" as well as trigger point injections. (Tr. at 29, 30.) In addition, the ALJ noted that it does not appear that any provider prescribed pain medication for Plaintiff during the time period at issue. (Tr. at 30, 31.)

Moreover, the ALJ explained that Plaintiff's treatment notes from April 2023 reflect "that she was independent with ambulation, functional transfers, performing activities of daily living, caring for her newborn daughter, and exercising/walking, despite some pain with stair climbing, bending, and lifting from the floor." (Tr. at 32) (citing Tr. at 721). In addition, the ALJ noted that "[t]hroughout the period, notes also reflect that [Plaintiff] was in college, but with some decline in grades, and was caring for her child who was born in January 2023." (Tr.

at 32.)  The ALJ found that Plaintiff's "ability to perform these activities of daily living [was] relatively inconsistent with her allegations of total disability." (Tr. at 32.)  In addition, the ALJ noted that these reports starkly conflicted with Plaintiff's hearing testimony, in which Plaintiff "stated that she needed help to perform essentially all activities of daily living, like bathing, dressing, caring for her child, and typing and spent 80% of the day lying in bed." (Tr. at 32.) The ALJ considered this inconsistency in evaluating Plaintiff's credibility, and concluded that the inconsistency in Plaintiff's accounts "further reduces finding support for [Plaintiff's] allegations of total disability." (Tr. at 32.)  The ALJ concluded that, "while the record is clear that [Plaintiff] has some symptoms related to her conditions, including primarily pain and mood symptoms with difficulty concentrating, it does not support [Plaintiff's] allegations of further limitations." (Tr. at 32.)[5]

The ALJ then included physical limitations in the RFC with respect to issues that Plaintiff cited as increasing her pain.  For example, the ALJ limited Plaintiff to light exertional level work with only occasional overhead reaching, and limited handling, fingering, stooping, kneeling, and crouching. (Tr. at 25, 32.)  The ALJ also specifically acknowledged Plaintiff's

---

[5] Plaintiff also contends that the medical opinions do not support the ALJ's decision.  In this regard, because Plaintiff did not allege any mental impairments, there was no separate analysis by state agency psychologists. However, to the extent Plaintiff contends that her pain rendered her unable to work, the state agency physicians concluded that Plaintiff's physical impairments, including pain affecting her ability to concentrate, would not preclude her ability to work.  Specifically, state agency physician Dr. Celeste Williams considered Plaintiff's contentions regarding her physical symptoms and Plaintiff's contention that her conditions affected "memory, completing tasks, concentration, [and] following instructions." (Tr. at 107-08.)  Dr. Williams nevertheless concluded that the record reflected "normal cognition," that Plaintiff's conditions were stable, and that her activities of daily living showed that "she is able to function." (Tr. at 97, 99, 101, 104, 106, 108.)  Dr. Williams further noted that "[p]ain is considered," but nevertheless concluded that Plaintiff could maintain full-time, medium work. (Tr. at 101, 107.)  The ALJ found this opinion persuasive but with more restrictive exertion, manipulative, and postural limitations. (Tr. at 33.)  For her part, Plaintiff did not present any opinion evidence supporting her claims, and Plaintiff has not pointed to any indications from her treating providers that she was unable to work.

16

contentions that pain affected her ability to concentrate. At step three of the sequential analysis, the ALJ acknowledged that Plaintiff "initially reported some difficulty [with regard to concentrating, persisting, and maintaining pace] due to pain" and "complained of some difficult in memory and concentration due to pain." (Tr. at 25); (see also Tr. at 26 (acknowledging Plaintiff's allegations "that pain limits her ability to remember, concentrate, and complete tasks")). The ALJ also noted that she "generally maintained unremarkable alertness, orientation, behavior, insight, and judgment." (Tr. at 25.) The ALJ took all of the above into consideration before concluding as follows:

> To account for [Plaintiff's] psychological symptoms and impairments, as well as the mental functioning limitations and any effects from pain, the undersigned finds that [Plaintiff] can only understand, remember, and carry out simple instructions that can be detailed, but not complex, with tasks that are simple, routine, and repetitive in nature. [Plaintiff] can focus on tasks for two hours at a time and perform jobs learned by demonstration of 30 days or less with routine changes. Furthermore, the undersigned finds that [Plaintiff] cannot drive an automobile for completion of job task[s] and can only have exposure to moderate noise levels.

(Tr. at 32 (emphasis added).)

In doing so, the ALJ met the "narrative discussion requirements" set out in SSR 96-8p by explaining how the evidence was resolved, and finding that Plaintiff's symptoms, including pain, were not as frequent, intense, persistent, or limiting as Plaintiff alleged. Whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). Here, the ALJ reviewed the medical evidence, Plaintiff's testimony, and the record, and sufficiently

17

explained her analysis of Plaintiff's subjective complaints. While Plaintiff disagrees with the ALJ's determination, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ provided sufficient analysis to allow the Court to follow her reasoning, and the ALJ relied on Plaintiff's testimony, Plaintiff's statements to her medical providers and examiners, the treatment history, and the record as a whole, which provides substantial evidence to support the ALJ's determination. Accordingly, the Court finds no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #7] is DENIED, that Defendant's Dispositive Brief [Doc. #9] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 25th day of February, 2026.

Joi Elizabeth Peake
United States Magistrate Judge